UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE B., | Case No.: 23-cv-01141-JLB |
| Plaintiff, | **ORDER RE MERITS BRIEF** |
| v. | **[ECF No. 15]** |
| MARTIN O'MALLEY, Acting Commissioner of Social Security, | |
| Defendant.[1] | |

On June 20, 2023, plaintiff Jamie B. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his applications for supplemental security income benefits ("SSI") and disability insurance benefits.  (ECF No. 1.)  On October 31, 2023, the Commissioner filed the Administrative Record.  (ECF Nos. 16–18.)

Now pending before the Court and ready for decision is Plaintiff's merits brief. (ECF No. 15.)  The Commissioner filed an opposition.  (ECF No. 21.)  For the reasons set

---

[1]    Martin O'Malley, the current Acting Commissioner of Social Security, is automatically substituted as defendant for Kilolo Kijakazi, pursuant to Federal Rule of Civil Procedure 25(d).  *See* Fed. R. Civ. P. 25(d).

1  forth herein, the Court **DENIES** Plaintiff's merits brief to the extent it requests remand for
2  the direct award of benefits, but **GRANTS** Plaintiff's merits brief to the extent it
3  alternatively requests remand for further administrative proceedings.

4  **I.    PROCEDURAL BACKGROUND**

5        On January 28, 2016, Plaintiff filed an application for a period of disability and
6  disability insurance benefits under Title II of the Social Security Act, and an application
7  for SSI under Title XVI of the Social Security Act, alleging disability beginning
8  January 27, 2015.  (Certified Administrative Record ("AR") at 214–21, 222–27.)  After his
9  application was denied initially and upon reconsideration (AR 102–32, 133–55, 159–63),
10 Plaintiff requested an administrative hearing before an administrative law judge ("ALJ")
11 on November 1, 2016 (AR 164–65).  An administrative hearing was held on May 29, 2018,
12 before ALJ Andrew Verne.  (AR 55–101.)  Plaintiff appeared at the hearing with counsel,
13 and testimony was taken from him, as well as from a vocational expert ("VE").  (AR at
14 55–101.)

15       As reflected in his September 25, 2018 hearing decision, ALJ Verne found that
16 Plaintiff had not been under a disability, as defined in the Social Security Act, from
17 January 27, 2015, through the date of decision.  (AR 31–54.)  The ALJ's decision became
18 the final decision of the Commissioner on January 7, 2020, when the Appeals Council
19 denied Plaintiff's request for review.  (AR 1–6.)

20       On February 10, 2020, Plaintiff filed a civil action seeking judicial review of the
21 Commissioner's decision.  *See Becker v. Saul*, 20-cv-00250-KSC (S.D. Cal.), ECF No. 1.
22 On October 7, 2020, the parties filed a Joint Motion for Voluntary Remand, and the case
23 was remanded for further proceedings.  *Id.*, ECF Nos 17, 18.[2]

24 

25 
26 [2]     The Court notes that on or about March 16, 2020, Plaintiff appears to have filed
27 another application for a period of disability and disability insurance benefits, alleging
   disability beginning on January 27, 2015.  (AR 1182–88.)  After his application was denied
28 initially and upon reconsideration (AR 890–905, 914–41, 1088–92), Plaintiff requested an
   administrative hearing before an ALJ on January 27, 2021 (AR 1093–94).  However, the

23-cv-01141-JLB

On remand, a telephonic administrative hearing was held on June 23, 2021, before a different ALJ, William K. Mueller.  (AR 798–813.)  Plaintiff appeared at the hearing with counsel, and testimony was taken from him, as well as from a VE.  (AR 798–813.)  After the hearing, Plaintiff underwent an internal medicine consultative examination and psychiatric consultative examination for disability determination purposes.  (AR 697, 1573–94.)   On October 12, 2022, and March 6, 2023, ALJ Mueller held additional telephonic hearings.  (AR 697, 768–97, 729–67.)

As reflected in his April 17, 2023 hearing decision, ALJ Mueller found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 27, 2015, through the date of decision.  (AR 694–727.)  The ALJ's decision became the final decision of the Commissioner on June 17, 2023.  (ECF No. 15 at 4.)  This timely civil action followed.  (*Id.*)

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 27, 2015, the alleged onset date.  (AR 700.)

At step two, the ALJ found that Plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"), anxiety with agoraphobia, major depressive disorder, schizoaffective disorder, attention deficit hyperactivity disorder ("ADHD") per history, obesity, and right shoulder degenerative joint disease.  (AR 700–02.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 702–04.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")

_____

instant matter pertains only to the ALJ's decision on Plaintiff's 2016 applications, after remand for further consideration.  (AR 694–727; *see also* ECF No. 15 at 9.)

"to perform light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> stand and walk no more than 2 hours per day, occasional postural abilities, with a sit/stand option, no heights, no dangerous machinery, no exposure to dangerous equipment, no pulmonary irritants, simple routine tasks, occasional public contact, occasional interaction with co-workers and supervisors, no tandem work, no fast-paced work, no production line quota work, and in an work environment that is no more than moderately noisy.

(AR 704.)

For purposes of his step four determination, the ALJ determined that Plaintiff was unable to perform any past relevant work. (AR 715.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, router, order caller, and marker), the ALJ found that Plaintiff was not disabled under the law from January 27, 2015, through the date of decision. (AR 716–17.)

## III. PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's merit's brief, the disputed issues that Plaintiff is raising as the grounds for reversal and remand for an award of benefits are as follows:

1. Whether the Court should credit as true the physical opinions of medical expert Harvey Alpern, M.D., and Plaintiff's treating physician, Roozscheher Safi, M.D. (ECF No. 15 at 6–11.)

2. Whether the Court should credit as true the mental opinions of consultative examiners, Kathy Vandenburgh, Ph.D., Gregory Nicholson, M.D., and Jessica Durr, Ph.D., as well as treating psychologist Frederick Alpern, Ph.D. (*Id.* at 12–20.)

3. Whether the Court should credit as true Plaintiff's subjective limitations. (*Id.* at 20–24.)

///

**IV.    STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).  In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence.  *Id.*

**V.    DISCUSSION**

**A.    Relevant Background**

On June 23, 2021, the ALJ held a hearing on remand and expressed that he had insufficient evidence to make a disability determination on the record before him.  (AR 802–05.)  In particular, he was concerned that Frederick Alpern, Ph.D.'s June 5, 2021 opinion was inconsistent with his treatment notes, and he did not want to rely on consultative examinations from 2016. (AR 804.)  Accordingly, he asked Plaintiff to attend another mental health consultative examination and another orthopedic consultative examination.  (AR 805.)

On October 12, 2022, the ALJ held another hearing.  (AR 768–97.)  Plaintiff was represented by counsel and testified, along with a VE.  (AR 768–97.)  During the hearing, the ALJ expressed concern that all of Plaintiff's impairments were based on subjective complaints.  (AR 795.)  Plaintiff's counsel disagreed.  (AR 795–96.)

///

The ALJ held a final hearing on March 6, 2023, at the request of Plaintiff's counsel. (AR 732–33.) Two medical experts and another VE testified, in addition to Plaintiff, who was represented by counsel. (AR 729–67.) The medical experts included Dr. Harvey Alpern, an expert in internal medicine and cardiovascular disease, and Dr. Linda Miller, a Board-certified psychiatrist. (AR 732, 740.)

Dr. H. Alpern testified as follows:

> This claimant is about 50-years-old. The claimant has morbid obesity, obstructive sleep apnea related to it. The BMI is almost 44. There is orthopedic problems of Achilles tendonitis making it difficult because of bilateral leg pain, there is right shoulder pain, there is chest pain due to pleurisy. There is bronchitis and right – as I mentioned right shoulder pain as well. I believe that the claimant does not meet or equal a listing of medical, but with restrictions. I can give you my estimate of the restrictions.
>
> . . .
>
> He would be able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk less than two, sit six, posturals would all be occasional. Overhead on the right side would only be occasional. There would be no ropes, ladders or scaffolds or dangerous equipment because of some dizziness and the obesity and there would be restrictions with dusts, fumes and irritants. Pulmonary.

(AR 736–37.) Dr. H. Alpern was asked no questions about his opinions. (AR 737.)

Dr. Miller then asked several questions of Plaintiff because she could not discern a basis for Plaintiff's diagnoses based on the DSM. (AR 737–44.) She noted that Plaintiff's diagnoses all appeared to be based on his subjective complaints and that his mental status examinations consistently showed no cognitive impairments. (AR 744.) She further noted that none of his chart notes identified any functional limitations. (AR 745.)

At this time, the ALJ noted that "one of th[e] things that has bothered [him] throughout is these providers . . . report what they are told by [Plaintiff] as his symptomology but they just use the symptoms and call them a diagnosis without ever . . . observing anything objectively that will substantiate those things." (AR 745.)

///

23-cv-01141-JLB

Dr. Miller then continued, stating that Plaintiff's primary condition may be obstructive sleep apnea because it heavily impacts mood and anxiety, leads to non-restorative sleep, and makes it hard to focus and concentrate. (AR 745–46.) Dr. Miller noted that the medical record does not show chronic difficulties with the ability to focus and concentrate. (AR 746.) She concluded that she believes Plaintiff probably has bipolar disorder type II and generalized anxiety disorder, and these are medically determinable impairments. (AR 746, 749.)

In assessing the paragraph B criteria of Listings 12.04 and 12.05, Dr. Miller testified that she found no evidence indicating Plaintiff is incapable of understanding, remembering, or applying information with simple and repetitive work. (AR 749.) Dr. Miller further opined that there is no evidence (*i.e.*, insufficient evidence) he is unable to interact with others. (AR 750.) With respect to concentration, persistence, and pace, Dr. Miller stated she would assess at most moderate limitations. (AR 750.) Lastly, concerning Plaintiff's ability to adapt or manage himself, she stated that Plaintiff would have mild limitations. (AR 750.) Dr. Miller further opined that the following functional limitations would set Plaintiff up for success: (1) restriction to simple and repetitive work; (2) no assembly line work where he has to work heavily against time for production quotas; (3) moderate noise environment; (4) no collaboration in a work setting to get any specific tasks done; and (5) no work with the general public. (AR 751.) Plaintiff's attorney had no questions for Dr. Miller. (AR 752.)

The ALJ then turned to the VE who stated that she paid close attention to the testimony of the medical experts. (AR 754.) The ALJ first asked the VE if there were any jobs available for a hypothetical individual with the following limitations: sedentary work, occasional postural activities, no heights or hazardous machinery, no exposure to dangerous equipment, no working in an environment with concentrations of environmental or pulmonary irritants, occasional public contact, occasional interactions with coworkers and supervisors, no tandem work, no fast paced work, simple routine tasks, no production line quota type work, and a work environment that is no more than moderately noisy. (AR

754–55.)  The VE opined that such a hypothetical individual could perform work as a document preparer, type copy examiner, and gauger.  (AR 755.)

Next, the ALJ asked the VE if there would be any jobs available for an individual with the same limitations but limited to light work (as opposed to sedentary work), where the "standing and walking is limited to less than six [hours]."  (AR 756.)  The ALJ later clarified that he was asking about an individual who could perform light work "but *standing no more than two hours in a day*."  (AR 756 (emphasis added).)  The VE responded that there are "jobs in the light category, which is a sit/stand option" in which "the individual has the opportunity to sit and stand at will."  (AR 756.)  The VE opined that such a hypothetical individual could perform work as a router, order caller, and marker. (AR 756–57.)

Plaintiff's counsel asked about the reasoning level of the document preparer job. (AR 757.)  The VE testified that it is a reasoning level 3 job.  (AR 757.)  Plaintiff's counsel also asked the VE if an individual who "could *only stand and walk less than two [hours]*, sit up to six [hours], and [was limited to] simple work," would be able to perform any of the jobs previously identified by the VE.  (AR 763 (emphasis added).)  The VE testified that such an individual would be able to perform all three of the jobs she identified at the light level.  (AR 763.)  The VE clarified that all three jobs would be available as they have the "sit/stand option."  (AR 763–64.)

To clarify, the ALJ then asked the VE whether someone similar to Plaintiff could perform competitive work if he was "not capable of completing an eight hour day."  (AR 764.)  The VE responded that an individual unable to complete an eight-hour workday would be "unemployable and would not be able to do the work identified."  (AR 764.)

In his decision, the ALJ found that Plaintiff has the following severe impairments: PTSD, anxiety with agoraphobia, major depressive disorder, schizoaffective disorder, ADHD per history, obesity, and right shoulder degenerative joint disease.  (AR 700.)  The ALJ further found that Plaintiff has the following non-severe impairments: bilateral wrists condition, lumbar degeneration, migraines, bursitis, sleep apnea, left shoulder condition,

and hearing loss. (AR 700–02.) At step three, the ALJ found that Plaintiff has moderate limitations in all four of the paragraph B criteria under Listings 12.03, 12.04, 12.06, 12.11, and 12.15. (AR 703–04.)

The ALJ assessed Plaintiff has having the RFC "to perform light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[3] with the following limitations:

> *stand and walk no more than 2 hours per day*, occasional postural abilities, *with a sit/stand option*, no heights, no dangerous machinery, no exposure to dangerous equipment, no pulmonary irritants, simple routine tasks, occasional public contact, occasional interaction with co-workers and supervisors, no tandem work, no fast-paced work, no production line quota work, and in an work environment that is no more than moderately noisy.

(AR 704 (emphasis added).)

In reaching this RFC, the ALJ resolved several conflicting opinions and stated that his RFC was supported by the opinions of Dr. H. Alpern and Dr. Miller, the two experts who testified at the last hearing. (AR 715.) With respect to Plaintiff's physical RFC, the ALJ gave great weight to Dr. H. Alpern's opinions, which he stated were "generally consistent" with those of Juliane Tran, M.D., who saw Plaintiff for an orthopedic evaluation on August 18, 2020. (AR 706, 710–11.) The ALJ noted that Dr. H. Alpern opined that Plaintiff could stand or walk less than two hours and sit for six hours in a workday, and Dr. Tran opined that Plaintiff could stand and walk two hours in an eight-

---

[3]   *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

23-cv-01141-JLB

1    hour workday.  (AR 710–11.)[4]

2          The State Agency medical consultants both opined that Plaintiff could stand and

3    walk for six hours in an eight-hour workday.  (AR 711.)  The ALJ gave their opinions little

4    weight.  (AR 711.)  Similar to Dr. H. Alpern, Roozscheher Safi, M.D. opined, *inter alia*,

5    that Plaintiff could stand/walk less than two hours total in an eight-hour workday.  (AR

6    711.)  However, unlike Dr. H. Alpern, Dr. Safi opined that Plaintiff could only sit about

7    four hours total in an eight-hour workday, lift and/or carry less than ten pounds

8    occasionally, and would need to take two to three unscheduled twenty-minute breaks per

9    day.  (AR 712, 1833–34.)  The ALJ gave little weight to Dr. Safi's opinions because they

10   were overly restrictive and inconsistent with the opinions of Dr. Tran and Dr. H. Alpern.

11   (AR 711–12.)

12         **B.    Analysis**

13                 1.    Physical RFC

14         The Commissioner takes the position that "remand for further administrative

15   proceedings is needed to reevaluate the medical opinion evidence."  (ECF No. 21 at 6.)

16   Specifically, the Commissioner "agrees with Plaintiff that the ALJ erred in evaluating the

17   assessment of testifying medical expert Harvey Alpern, M.D." (*Id.*)  The Commissioner

18   further agrees that the "ALJ's unexplained deviation from Dr. H. Alpern's opinion is

19   harmful error that requires remand for further proceedings." (*Id.*)  The Commissioner

20   specifically points to the unresolved conflict between the opinions of Dr. Tran and

21   Dr. H Alpern with respect to how many hours Plaintiff can stand and/or walk in an eight-

22   hour workday—two hours versus less than two hours. (*Id.* at 7.)

23         The Court agrees with both parties that the ALJ committed legal error in failing to

24   explain why he rejected Dr. H. Alpern's opinion that Plaintiff could only stand or walk *less*

25   *than* two hours in a workday, despite giving the opinion great weight. (*See* ECF Nos. 15

26   _____

27   [4]      Dr. Tran specifically opined that Plaintiff's maximum standing and walking capacity

28   was "[a]t least 2 hours in an 8-hour workday."  (AR 1812.)

1  at 6–7, 21 at 6.)[5]   Moreover, as the VE testified that there are no jobs available for an

2  individual who can only stand or walk less than two hours and sit for only six hours,[6] for a

3  total of less than eight hours in a workday (AR 763–64), the Court agrees that such error

4  is not harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir.

5  2006) (defining harmless error as such error that is "inconsequential to the ultimate

6  nondisability determination").   However, as discussed below, the Court finds that the

7  Commissioner is the proper party to resolve this error.

8         Courts "generally remand for an award of benefits only in rare circumstances, where

9  no useful purpose would be served by further administrative proceedings and the record

10 has been thoroughly developed." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

11 1100 (9th Cir. 2014) (internal citations and quotation marks omitted).   Here, although

12 Plaintiff urges the Court to award benefits, the Court finds that the Commissioner is the

13 proper party to resolve his error and address the conflict between the two opinions to which

14 he gave great weight.   *See Treichler*, 775 F.3d at 1101 ("Where there is conflicting

15 evidence, and not all essential factual issues have been resolved, a remand for an award of

16 benefits is inappropriate."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

17 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical

18 evidence.").   In *Garrison*, the Ninth Circuit denied the Commissioner's request to remand

19 for further proceedings so that the ALJ could revisit the medical opinions and testimony

20 that she rejected for legally insufficient reasons.   The Court finds *Garrison* to be

21 distinguishable from the current case.   Although, the ALJ did err by failing to properly

22 address the discrepancy between his RFC and the opinion of a doctor to which the ALJ

23 gave great weight, the ALJ here also gave great weight to the opinion of a doctor whose

24

25
26  5    *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does
    not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting
27  one medical opinion over another, he errs.").
28  6    The Court notes that Dr. H. Alpern did not clearly opine that Plaintiff could not sit
    more than six hours in a workday.  (*See* AR 736.)

23-cv-01141-JLB

opinion *is consistent* with the assessed RFC—Dr. Tran.  *Garrison*, 759 F.3d at 1021–22.  Dr. Tran opined that Plaintiff has a maximum standing and walking capacity of at least two hours in an eight-hour workday and no limitation on sitting, which does not preclude light work with a sit/stand option.  (AR 1812.)[7]

In short, this is not a situation where there is only one credit-worthy opinion and one inevitable answer with respect to Plaintiff's physical limitations.  *Cf. Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (declining to return the case to the ALJ to make an RFC determination a second time "because the record, including the limited [VE] testimony, clearly establishes that [the plaintiff] cannot perform a sedentary job or any other substantial gainful work that exists in the national economy"); *Bilby v. Schweiker*, 762 F.2d 716, 720 (9th Cir. 1985) (finding it appropriate to remand for entry of judgment ordering the payment of benefits where "the uncontroverted medical testimony establishes total disability").  In urging the Court to award benefits, Plaintiff asks the Court to re-weigh all the opinions concerning Plaintiff's physical RFC and accept only the ones favorable to Plaintiff.  The Court does not find it proper to do so.[8]  Although the ALJ committed harmful

---

[7]    *See* SSR 83-10, 1983 WL 31251, at *6 (1983) ("[A] job is [considered light work] when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs.  A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls[.] . . . [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time. . . .  Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk."); *see also* AR 756–59 (VE opined that there are jobs in the light category with a sit/stand option that can accommodate standing no more than two hours in a day).

[8]    Without reweighing the physical medical opinions, the Court does note that the record does not clearly weigh towards Plaintiff being physically disabled.  *See Garrison*, 759 F.3d at 1021 (noting that a district court retains the flexibility to "remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act").  For example, during the October 2022 hearing, Plaintiff testified that the only physical problem that would keep him from working was his "bursitis when it does act up."  (AR 781.)  Moreover, in

1  error, it appears to the Court to also be correctable error. *See Lewin v. Schweiker*, 654 F.2d

2  631, 635 (9th Cir. 1981) ("If additional proceedings can remedy defects in the original

3  administrative proceedings, a social security case should be remanded.").

4         2.   Mental RFC

5         With respect to Plaintiff's mental RFC, Plaintiff argues that the ALJ improperly

6  evaluated the opinions of nearly every physician who opined on Plaintiff's mental

7  limitations, including Dr. Vandenburgh, Dr. Nicholson, Dr. Durr, and Dr. F. Alpern. (ECF

8  No. 15 at 12–20.)  Plaintiff specifically argues that it is irrational for the ALJ to have relied

9  on the opinions of Dr. Miller because she did not consider three of the mental impairments

10 that the ALJ found severe, including PTSD from traumatic childhood abuse, which

11 Plaintiff contends is the primary mental impairment in this case. (*Id.* at 12.)  Plaintiff asks

12 the Court to credit the treating and examining doctors' opinions as true and award the

13 benefits sought. (*Id.* at 19–20.)  The Commissioner argues that the ALJ did not err in the

14 evaluation of the various psychological opinions, but if there were any error, the result

15 should be a remand for further administrative proceedings. (ECF No. 21 at 17.)

16         a.   *Legal Standard*

17         The "treating physician rule" applies in this case as Plaintiff's applications were filed

18 before March 27, 2017. *See Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).  Under

19 this rule, there is a "three-tiered hierarchy," which includes treating physicians, examining

20 physicians, and non-examining physicians. *Id.*  A treating physician's opinion is entitled

21 to "substantial weight," *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Embrey

22 v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)), and courts generally give it "more weight. . .

23 than . . .  the opinion of doctors who do not treat the claimant," *Lester v. Chater*, 81 F.3d

24 _____

25

26 June 2021, Plaintiff testified that he was capable of walking a mile-and-a-half to get to his
   doctor's appointments.  (AR 809.)  Again, in 2016, after Plaintiff's alleged onset date,
27 Plaintiff reported walking every day for about an hour, averaging around 10,000 steps or
   approximately five miles.  (AR 710.)  The Court considered this testimony in declining to
28 exercise its discretion to remand for an award of benefits.

821, 830 (9th Cir. 1995).  "The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician." *Ford*, 950 F.3d at 1155 (quoting *Lester*, 81 F.3d at 830).  The lowest-weighted tier comprises "physicians who only review the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003).

To reject either a treating or an examining physician's opinion, an ALJ must provide "clear and convincing reasons," if the opinion is uncontradicted by other evidence, or "specific and legitimate reasons" otherwise, and the reasons must be supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  "An ALJ needs less substantial evidence to reject an examining physician's opinion than to reject a[] treating physician's opinion." *Ford*, 950 F.3d at 1155 (citation omitted).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831.

An ALJ can meet his or her "burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1545, 416.945.  It reflects the most that a claimant can do despite his limitations. SSR 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not severe, and evaluate "all of the

relevant medical and other evidence." *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective"). Therefore, an ALJ errs when he provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Vertigan*, 260 F.3d at 1049. The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and his decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### b. *Background*

In assessing Plaintiff's mental RFC, the ALJ limited Plaintiff to "simple routine tasks, occasional public contact, occasional interaction with co-workers and supervisors, no tandem work, no fast-paced work, no production line quota work, and in a[] work environment that is no more than moderately noisy." (AR 704.) Plaintiff's mental RFC is generally consistent with the opinion of Dr. Miller, who testified at the final hearing, as outlined above. The ALJ gave "great weight" to the opinion of Dr. Miller, other than her assessed limitations of no collaboration and no work with the general public. (AR 712.) The ALJ recognized that Dr. Miller's opinions accounted only for Plaintiffs mental conditions of bipolar disorder and general anxiety disorder. (AR 712.)

On June 18, 2016, Plaintiff saw Dr. Vandenburgh, for a complete adult psychological evaluation. (AR 707.) Dr. Vandenburgh opined that Plaintiff would have moderate, marked, and no limitations in various functional areas. (AR 713.) The ALJ gave

"partial weight" to the opinion of Dr. Vandenburgh, giving more weight to the moderate limitations, as they are "supported by the objective evidence including some abnormal findings on mental status examinations and mental health treatment records," and "little weight" to the marked limitations, as "mental status examinations throughout the record were within normal limits" and "the record indicates the claimant's mental health conditions and symptoms improved on medication." (AR 713.)

On August 4, 2020, Plaintiff underwent a psychological evaluation with Jessica Durr, Ph.D. (AR 1798–1804.) Dr. Durr assessed Plaintiff as having mild, moderate, marked, extreme, and no restrictions in various functional areas. (AR 1798–1804.) On December 1, 2021, Plaintiff underwent a comprehensive psychiatric evaluation with Dr. Nicholson. (AR 1586–94.) Dr. Nicholson assessed Plaintiff as having mild, moderate, and no restrictions in various functional areas. (AR 1586–94.) The ALJ gave "some weight" to the opinions of Dr. Durr and Dr. Nicholson to the extent they assessed mild to moderate functional limitations, as they are "generally supported by the objective evidence including some abnormal findings on mental status examinations and mental health treatment records." (AR 713.)[9] The ALJ gave less weight to the marked restrictions assessed by Dr. Durr, noting that "mental status examinations throughout the record were within normal limits" and "the record indicates the claimant's mental health conditions and symptoms improved on medication." (AR 713.)

On November 20, 2020, Dr. F. Alpern, one of Plaintiff's treating psychologists, opined on Plaintiff's condition, assessing moderate to extreme limitations. (AR 714.) On June 5, 2021, Dr. F. Alpern issued another opinion, assessing Plaintiff with slight to extreme limitations. (AR 714.) The ALJ gave "little weight" to the opinions of Dr. F.

---

[9]     The ALJ similarly gave "some weight" to the State Agency mental consultants, CW Kang, M.D. and R. Chahal, M.D., who did not opine that Plaintiff had more than mild or moderate limitations. (AR 713 (citing Exs. 1A (AR 102–15), 3A (AR 117–31)).)

Alpern assessing "moderate[10] to extreme functional limitations, where [they are] not supported by the objective evidence including mental status examinations throughout the record, which were within normal limits." (AR 714.) The ALJ also noted that the "record indicates the claimant's mental health conditions and symptoms improved on medication." (AR 714.)

The multitude of opinions given by the various physicians on Plaintiff's limitations are outlined in the chart below:

| | None | Mild/Slight | Moderate | Marked | Extreme |
|---|---|---|---|---|---|
| Understand and remember short, simple instructions | -Vandenburgh (6/8/16) -Nicholson (12/1/21) -Durr (8/4/20) -Miller (3/6/23) | -F. Alpern (6/5/21) -F. Alpern (11/20/20) -Chahal (10/6/16) -Kang (7/7/16) | | | |
| Carry out short, simple instructions | -Nicholson (12/1/21) -Durr (8/4/20) -Miller (3/6/23) | -F. Alpern (6/5/21) -F. Alpern (11/20/20) -Kang (7/7/16) -Chahal (10/6/16) | -Vandenburgh (6/8/16) | | |
| Understand, remember, and carry out detailed instructions[11] | -Durr (8/4/20) | -Kang (7/7/16) -Nicholson (12/1/21) | -Vandenburgh (6/8/16) -Chahal (10/6/16) | -F. Alpern (6/5/21) -F. Alpern (11/20/20) | |

---

[10]   Although the ALJ stated that he gave "little weight" to the opinion of Dr. F. Alpern assessing "moderate to extreme functional limitations" (AR 714), the Court assumes for purposes of this decision that Dr. F. Alpern intended to say *marked* to extreme functional limitations, given the context and remainder of his decision (*i.e.*, he assessed and accepted moderate limitations elsewhere). However, that is something the ALJ should clarify on remand.

[11]   The RFC is limited to simple routine tasks. (AR 704.)

| | None | Mild/Slight | Moderate | Marked | Extreme |
|---|---|---|---|---|---|
| Ability to make judgments on simple work-related decisions | -Durr (8/4/20) -Nicholson (12/1/21) | -Kang (7/7/16) -Chahal (10/6/16) | -F. Alpern (11/20/20) | -F. Alpern (6/5/21) | |
| Ability to make judgments on complex work-related decisions | | -Nicholson (12/1/21) | | -F. Alpern (11/20/20) | -F. Alpern (6/5/21) |
| Maintain attendance and punctuality during a workday and workweek | -Vandenburgh (6/8/16) | | -F. Alpern (6/5/21) -Nicholson (12/1/21) -Kang (7/7/16) -Chahal (10/6/16) | -F. Alpern (11/20/20) | -Durr (8/4/20) |
| To perform at a consistent pace without more than regular breaks in a workday | | | -F. Alpern (11/20/20) -Nicholson (12/1/21) -Kang (7/7/16) -Chahal (10/6/16) | -F. Alpern (6/5/21) | |
| Maintain concentration, attention, persistence, and pace | | -Durr (8/4/20) | -Nicholson (12/1/21) -Miller (3/6/23) -Kang (7/7/16) -Chahal (10/6/16) | | |
| Interact appropriately with the public | -Vandenburgh (6/8/16) -Miller (3/6/23) | | -F. Alpern (6/5/21) -Nicholson (12/1/21) -Durr (8/4/20) -Kang (7/7/16) -Chahal (10/6/16) | | -F. Alpern (11/20/20) |

| | None | Mild/Slight | Moderate | Marked | Extreme |
|---|---|---|---|---|---|
| Interact appropriately with supervisors | -Vandenburgh (6/8/16) -Miller (3/6/23) | -F. Alpern (6/5/21) -Chahal (10/6/16) | -F. Alpern (11/20/20) -Durr (8/4/20) -Nicholson (12/1/21) | | |
| Accept instructions from supervisors | | -Kang (7/7/16) | -Nicholson (12/1/21) | | |
| Interact appropriately with co-workers | -Vandenburgh (6/8/16) -Miller (3/6/23) | -F. Alpern (6/5/21) | -F. Alpern (11/20/20) -Nicholson (12/1/21) -Durr (8/4/20) -Kang (7/7/16) -Chahal (10/6/16) | -Miller (3/6/23) (no collaboration) | |
| Sustain an ordinary routine without special supervision | -Durr (8/4/20) | -Kang (7/7/16) -Chahal (10/6/16) | -F. Alpern (6/5/21) -Vandenburgh (6/8/16) -Nicholson (12/1/21) | -F. Alpern (11/20/20) | |
| Respond appropriately to changes in a routine work setting | | | -Kang (7/7/16) -Chahal (10/6/16) -Nicholson (12/1/21) | -F. Alpern (6/5/21) | -F. Alpern (11/20/20) |
| Working in a small or crowded area | | | | -Vandenburgh (6/8/16) | |
| Handling work-related stress | | | | -Vandenburgh (6/8/16) | |
| Follow normal rules of the workplace | | | | -Durr (8/4/20) | |

23-cv-01141-JLB

|  | None | Mild/Slight | Moderate | Marked | Extreme |
|---|---|---|---|---|---|
| Adapt or manage himself |  | -Miller (3/6/23) |  |  |  |

### c.   Analysis

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). Here, the ALJ resolved the conflicts between the above mental opinions by adopting and incorporating into Plaintiff's RFC the mild and moderate limitation opinions of the physicians, in line with the ALJ's assessment that Plaintiff has moderate limitations in each of the paragraph B criteria. (AR 703–04.)

In resolving these conflicts, the ALJ rejected opinions that Plaintiff has marked or extreme limitations in the following areas: (1) Dr. Miller (non-examining physician)—no collaboration and no work with the general public[12]; (2) Dr. Durr (examining physician)—marked inability to follow normal rules of the workplace and extreme risk of calling in sick, not showing up, or needing to leave early; (3) Dr. Vandenburgh (examining physician)—marked impairment in coping with work-related stress and working in a small or crowded area; and (4) Dr. F. Alpern (2020) (treating physician)—extreme limitation in interacting appropriately with the public and responding appropriately to changes in a routine work setting, marked limitation in maintaining attendance and punctuality during a workday and workweek, sustaining an ordinary routine without special supervision; and (5) Dr. F. Alpern (2021) (treating physician)—marked limitation in making simple work-

---

[12]    Plaintiff does not claim the rejection of Dr. Miller's opinions was erroneous. As such, the Court will not address the rejection of this opinion.

related decisions, performing at a consistent pace without more than regular breaks in a workday, and responding appropriately to changes in a routine work setting.[13]

Where the marked or extreme limitation opinions regarding Plaintiff's functional capacity were contradicted by other medical opinions, the ALJ could properly reject these opinions by giving "specific and legitimate reasons" for doing so.[14]   *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).   The ALJ rejected the opinions of Drs. Durr, Vandenburgh, and F. Alpern on the basis that (1) the record generally indicates that Plaintiff's mental conditions and symptoms improved on medication, and (2) the opinions are not supported by the objective evidence, including mental status examinations throughout the record, which were within normal limits.  (AR 712–14.)

Plaintiff argues that these reasons were vague and not specific and legitimate.  (ECF No. 15 at 16.)  Plaintiff further argues that the ALJ cherry-picked the record and noted only a few isolated instances of improvement.  (*Id.* at 16–17.)  In response, the Commissioner argues that the ALJ did not err, but if he did, remand for further proceedings is appropriate because it is not the court's role to resolve conflicts between medical opinions, especially where, as here, the record contains medical opinions that undermine Plaintiff's case.  (ECF No. 21 at 21.)  The Court addresses the ALJ's reasoning below.

First, the ALJ rejected the marked and extreme opinions by pointing out that the record generally indicates that Plaintiff's mental conditions and symptoms improved on medication.  (AR 712–14.)  The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. *See Warre v. Comm'r of Soc.*

---

[13]    *See supra* n.10.

[14]    Plaintiff does not argue that the higher "clear and convincing" standard applies, but rather asserts that the ALJ "erred in failing to provide specific and legitimate reasons to reject the limitations assessed by Dr. Vandenburgh." (ECF No 15 at 6.)  Later, Plaintiff argues that the Court should, on remand, either direct the ALJ to adopt the limitations assessed by Dr. Vandenburgh or direct him to "provide specific and legitimate reasons to reject the limitations." (*Id.* at 7.)

*Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Symptoms may wax and wane during the progression of a mental disorder.  Those symptoms, however, may also subside during treatment.  Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." (citations omitted)).  Specifically, the ALJ pointed to treatment notes in 2017, 2018, 2020, 2021, and 2022 indicating that although Plaintiff's symptoms are chronic, they are managed with his medications.  (*See* AR 627, 632, 647, 1542, 1819, 1874.)  The ALJ further expanded on this when summarizing Plaintiff's mental health history, noting that Plaintiff's mental examination was poor when he first presented for therapy in 2015, but he improved on psychotropic medication.  (AR 707 (citing Ex. 2F/6 (AR 436)).) [15]

Specifically, in October 2016, Plaintiff reported his concentration was improved some on medication.  (AR 708 (citing Ex. 7F/3 (AR 501)).)  In February 2017, Plaintiff reported that his anxiety and depression were under control and his concentration and focus was better, and in November 2017, he reported that he had an overall improvement in symptom management with medication.  (AR 708 (citing Exs. 12F/21–23 (AR 647–49), 47–49 (AR 673–75)).)  In March 2018, Plaintiff reported that his medications helped control his mental symptoms daily and felt they helped with his focus and restlessness and getting the basics done.  (AR 708 (citing Ex. 12F/6 (AR 632)).)  In April 2018, Plaintiff

---

[15] The Court notes that this basis has particular legitimacy when discounting or rejecting more dated opinions, such as those of Dr. Vandenburgh.  The Court notes, however, that it would have been preferable had the ALJ specifically addressed each opined limitation individually.  This is particularly true for those opinions that are only generally, and not directly, contradicted by the opinions of other doctors, such as the opinion of Dr. Vandenburgh that Plaintiff has marked impairment in working in a small or crowded area. This is something the ALJ should specifically address on remand.

reported chronic mental symptoms that he managed with medications and did not see the need to make any medication changes.  (AR 709 (citing Ex. 12F/1–3 (AR 627–29)).)

Continuing chronologically, in October 2020, Plaintiff reported chronic symptoms which were better managed with his medication regime.  (AR 1819.)  He reported having some depressive days and had one isolated panic attack for which he took alprazolam with benefit.  (AR 1819.)  In April 2021, Plaintiff's psychological symptoms were reportedly stable, and in June 2021, Plaintiff reported that his chronic anxious and depressive symptoms were better managed with his medication, and he had good management of his ADHD symptoms on medication.  (AR 709 (citing Ex. 16F/2 (AR 1542)), 1548.).   In September 2022, Plaintiff reported that he had gotten off three medications, was doing okay, and was sleeping better with his medication, which helped.  (AR 709 (citing Ex. 20F/4 (AR 1602)).)  In October 2022, Plaintiff's bipolar disorder was noted to be in full remission and stable.  (AR 710 (citing Ex. 31F/17 (AR 1874)).)

The ALJ's second reason for rejecting these opinions was that they are not supported by the objective evidence, including mental status examinations throughout the record, which were within normal limits.  (AR 712–14.)  An ALJ may reject a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  In this regard, the ALJ specifically pointed to treatment notes in 2017 and 2018 indicating that Plaintiff's mental examinations were within normal limits.  (*See* AR 628–29, 648–49 673–75.)  He further noted that Dr. Miller testified that Plaintiff's more recent mental health notes by nurse practitioner Michelle Kleiner from November 2020 through September 2022, "only state[] 'no significant change' in mental status examinations and do not indicate specific findings."  (AR 712 (citing Exs. 16F, 20F).)

Overall, the Court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting the more severe limitation opinions of Drs. Durr, Vandenburgh, and F. Alpern.  In making this finding, the Court notes that although the ALJ gave less weight to the marked and extreme opinions of Drs. Durr, Vandenburgh, and

F. Alpern, he did incorporate restrictions addressing the concerns underlying those opinions in the RFC.  For example, when assessing Plaintiff's level of functioning, Dr. F. Alpern stated that Plaintiff could perform basic daily functions when his symptoms are not severe and can appropriately relate to a very small group of people when his trust level is high.  (AR 1840.)  He also assessed Plaintiff's concentration and task completion as fair to good when there is no social pressure.  (AR 1840.)  Dr. Durr similarly assessed Plaintiff with marked limitations due to his risk of getting overwhelmed with work stressors, as did Dr. Vandenburg, who opined that Plaintiff will have marked impairment in coping with work-related stress and become easily overwhelmed.  (AR 487, 1803.)  Here, the ALJ gave great weight to the opinion of Dr. Miller who suggested that certain functional limitations would "set [Plaintiff] up for success." (AR 750.)  The ALJ thereafter incorporated into the RFC the following limitations suggested by Dr. Miller to address Plaintiff's need for a low-stress, low-contact, comfortable environment: simple routine tasks, occasional public contact, occasional interaction with co-workers and supervisors, no tandem work, no fast-paced work, no production line quota work, and a work environment that is no more than moderately noisy.  (AR 704.)

The Court does not find persuasive Plaintiff's argument that the ALJ erred by failing to incorporate or reject the moderate limitation assessed by Dr. Nicholson (as well as by Dr. F. Alpern and Dr. Vandenburgh) in Plaintiff's ability to perform work activities without special or additional supervision.  (ECF No. 15 at 15.)  Plaintiff suggests that this "special supervision" necessarily involves a supervisor prompting Plaintiff to stay on task two or three times an hour, which is incompatible with work.  (ECF No. 15 at 15 (citing AR 790).)  However, none of the physicians opined on what this "special supervision" must entail.  (*See* AR 487, 1505, 1591.)  Rather, Dr. F. Alpern opined that Plaintiff would only have slight impairment in understanding, remembering, and carrying out short, simple instructions and would be able to follow simple instructions.  (AR 1504, 1509.)  Dr. Vandenburgh noted that Plaintiff needed no supervision to persist at tasks during his evaluation and would be able to concentrate for at least two-hour increments at a time.  (AR

487.)  Lastly, Dr. Nicholson opined that Plaintiff could understand, remember, and carry out not only simple instructions, but also complex instructions.  (AR 1591.)  An ALJ's assessment of a claimant adequately captures restrictions where the assessment is consistent with the restrictions identified in the medical testimony.  *See Stubbs-Danielson*, 539 F.3d at 1174.  Based on the foregoing, the Court cannot conclude that the ALJ erred. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985) ("If the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ.").  Accordingly, the Court finds that the ALJ did not err in assessing the mental RFC of Plaintiff.

### 3. Symptom Testimony

Lastly, Plaintiff argues that the ALJ erred in assessing Plaintiff's subjective symptom testimony and improperly cherry-picking the record.  (ECF No. 15 at 20–24.) Specifically, Plaintiff argues the ALJ failed to describe daily activities that are inconsistent with agoraphobia with panic attacks.  (*Id.* at 22.)  Plaintiff further argues that the ALJ did not identify any daily activities that are transferable to the rigors of full-time employment. (*Id.* at 23.)  In response, the Commissioner argues that the ALJ gave multiple valid reasons, supported by substantial evidence, for finding that Plaintiff's subjective complaints are not wholly reliable.  (ECF No. 21 at 12–17.)  The Commissioner further argues that "even if errors evaluating Plaintiff's complaints warrant remand, they do not warrant Plaintiff's request that this Court award [him] benefits."  (*Id.* at 17.)

#### a. *Legal Standard*

The ALJ must engage "in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  *Garrison*, 759 F.3d at 1014. At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (internal quotation marks and citation omitted).

If the claimant satisfies the first step, and there is no determination of malingering by the ALJ, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting

the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler*, 775 F.3d at 1102 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *see also Garrison*, 759 F.3d at 1014–15; *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  The Ninth Circuit "require[s] the ALJ to 'specifically identify the testimony [from a claimant] [the ALJ] finds not to be credible and . . . explain what evidence undermines this testimony.'"  *Id.* (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)); *see also Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it."); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints." (internal quotation marks and citation omitted)).

### b.   *Background*

The ALJ summarized Plaintiff's symptom testimony as follows:

The claimant reported that he cannot work due to physical and mental conditions (2E, 34E).

. . .

The claimant reported anxiety attacks, extreme highs and lows, prior trauma, distrust, depression, headaches (2E, 4E, 6E, 37E).  He reported that he has agoraphobia, short term memory loss, nightmares, and trouble staying focused (10E).  In his adult function reports, he reported that he cries a lot and cannot stop, forgets things (5E, 36E).  He reported difficulty with memory, completing tasks, concentration, understanding, and following instructions.  He reported he has tunnel vision, trouble sleeping, feels trapped in crowded areas, and has flashbacks.  He reported difficulty with lifting, walking, squatting, and kneeling.  The claimant testified that his roommate reminds him of things he needs to do (10/12/22 Hearing Testimony).  He testified to difficulty with memory and concentration.

(AR 705, 710.)

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 705.) However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the following reasons: (1) his statements are inconsistent with the objective medical evidence; (2) his daily activities are inconsistent with the claimed severity of his symptoms; and (3) with respect to Plaintiff's mental symptoms, Plaintiff improved on medications. (AR 710.) Because the ALJ did not make a finding of malingering, he could only reject Plaintiff's symptom testimony by providing specific, clear, and convincing reasons for rejecting the claimant's testimony regarding the severity of his symptoms. *See Treichler*, 775 F.3d at 1102

c.   *Analysis*

i.   Daily Activities

First, the ALJ discounted Plaintiff's testimony regarding the severity of his symptoms by pointing to his daily activities. (AR 710.) "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014); *see also Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("[I]nconsistent daily activities may provide a justification for rejecting symptom testimony[.]"); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating that a contradiction between a claimant's daily activities and his or her testimony is a ground for forming the basis of an adverse credibility determination). In other words, a court may consider inconsistencies between a claimant's words and her actions. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from

her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant "does not need to be utterly incapacitated in order to be disabled." *Id.* (internal quotation marks and citation omitted).

Daily activities may also "be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). To meet this standard, the ALJ "must make 'specific findings relating to [the daily] activities' and their transferability [to a work setting] to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, in order to undercut Plaintiff's testimony regarding the severity of his physical symptoms, the ALJ identified a treatment record from April 2016 in which Plaintif reported that he walks every day for about one hour and measures his steps, averaging around 10,000 steps. (AR 710 (citing Ex. 7F/38 (AR 536)).) The ALJ further noted that Plaintiff testified that aside from his bursitis acting up in his shoulders, Achilles' tendon in his heels, back, and knee issues, there are no other physical problems that keep him from working. (AR 710 (citing Hearing Testimony).) The ALJ also noted that Plaintiff testified he will stretch to help his physical conditions, he has difficulty with overhead reaching, and he can use his smartphone. (AR 710.) Elsewhere in the opinion, the ALJ noted that Plaintiff regularly reported that he was independent in his activities of daily living, could drive a car to go shopping independently, ambulated without an assistive device, and his typical day included cooking, cleaning, and exercising. (AR 703, 708–09.) Given the inconsistency between the severity of Plaintiff's claimed limitations and Plaintiff's daily activities, the Court finds that this is a specific, clear, and convincing reasons for' rejecting Plaintiff's testimony regarding the severity of his physical symptoms.

Next, in order to reject Plaintiff's testimony regarding the severity of his mental symptoms, the ALJ pointed to Plaintiff's testimony that he could drive a car independently to get food and medications and was able to cook meals, do laundry, and perform self-

grooming tasks.  (AR 710.)  The ALJ also pointed to Plaintiff's close friendship of twelve years with his roommate and a very positive relationship with her family, and the fact Plaintiff enjoyed talking and playing online games with friends.  (AR 710.)  Elsewhere in the opinion, the ALJ noted that Plaintiff reported that he would talk to others in mental health forums.  (AR 709.)  Given the inconsistency between the severity of Plaintiff's claimed limitations and Plaintiff's daily activities, the Court finds that this is a specific, clear, and convincing reason for rejecting Plaintiff's testimony regarding the severity of his mental symptoms.

ii.     *Inconsistent with Objective Medical Evidence*

Second, the ALJ discounted Plaintiff's testimony regarding the severity of his symptoms by pointing to inconsistencies with the objective medical evidence.  (AR 710.)  An ALJ may not discredit a claimant's testimony on the severity of the symptoms merely because they are unsupported by objective medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Bunnell v. Sullivan*, 947 F.2d 341, 343, 345, (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  However, an ALJ may consider the lack of objective medical evidence corroborating a claimant's subjective testimony as a factor in his credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, with respect to Plaintiff's physical symptoms, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are "inconsistent because the objective medical evidence generally does not support the alleged loss of function."  (AR 710.)  The ALJ pointed to objective evidence in the record showing normal physical examinations and radiographic scans.  (AR 710 (citing Exs. 1F/32

(AR 385), 6F (AR 492–493),[16] 17F (AR 1573–85),[17] 25F (AR 1806–1813), 31F/34 (AR 1891)).)   The ALJ pointed to a January 2018 treatment note indicating that Plaintiff's physical health had been stable.  (AR 710 (citing Ex. 12F/16 (AR 642)).)  He also pointed to a September 2021 internal medicine evaluation showing 5/5 normal motor strength in all extremities, intact sensation, normal reflexes, and normal gait, and a June 2022 physical examination that was within normal limits, other than obesity.  (AR 710 (citing Exs. 17F (AR 1573–85), 31F/34 (AR 1891)).)  Overall, the Court finds that this is a specific, clear, and convincing reason for rejecting Plaintiff's testimony regarding the severity of his physical symptoms.

With respect to Plaintiff's mental symptoms, the ALJ pointed out that the record indicates mental status examinations that were generally within normal limits.  (AR 710 (citing Exs. 7F, 12F/2–3, 22–23, 38–39, 47–49).)  For the same reasons set forth above in discussing the ALJ's assessment of the medical opinions, the Court finds that this is a specific, clear, and convincing reason for rejecting Plaintiff's testimony regarding the severity of his mental symptoms.

### iii.   *Improvement on Medication*

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ may consider whether the claimant had a "fair response" to medication or treatment.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of

---

[16]   Following a complete orthopedic evaluation on July 6, 2016, Herman R. Schoene, M.D., opined that Plaintiff could lift/carry fifty pounds occasionally and twenty-five pounds frequently, stand/walk six hours/eight-hour workday, and can sit for six hours/eight-hour workday, unlimited push/pull, and no other limitations.  (AR 496.)

[17]   Following a complete internal medicine evaluation on September 28, 2021, Phong T. Dao, D.O., opined that Plaintiff could lift fifty pounds occasionally, sit without interruption for four hours, stand without interruption for three hours, walk without interruption for three hours, and walk, stand, and sit for six hours in an eight-hour workday. (AR 1578–79.)

determining eligibility for SSI benefits."); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983); *see also* 20 C.F.R. § 404.1529(c)(3)(v) (listing the treatment an individual has received for relief of pain or other symptoms as a factor the ALJ may consider in evaluating symptoms); 20 C.F.R. § 416.929(c)(3)(v) (same).  Evidence that a claimant's condition has been consistently managed or corrected by medication may undermine subjective complaints of disabling limitations.  *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (suggesting that evidence of medical treatment successfully relieving symptoms such that the individual can return to a level of function close to the level of function they had before they developed the symptoms or signs of mental disorders can undermine a claim of disability); *William K. v. Saul*, No. 2:18-cv-05408-GJS, 2019 WL 4466789, at *3 (C.D. Cal. Sept. 18, 2019) (holding that the ALJ properly relied on claimant's ability to control symptoms with medication where last four examinations were consistently normal and no treatment adjustments were needed).  However, when assessing mental health issues, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d 995 at 1017.  With respect to mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.*

Here, the ALJ discounted Plaintiff's subject symptom testimony because the "record indicates the claimant had improved mental conditions and symptoms on medication." (AR 710.)  For the same reasons set forth above in discussing the ALJ's assessment of the physicians' opinions, the Court finds that this is a specific, clear, and convincing reason for rejecting Plaintiff's testimony regarding the severity of his mental symptoms.  Overall, the Court finds that the ALJ did not err in assessing Plaintiff' subjective symptom testimony.

///

///

**C.      Remand Is the Appropriate Remedy**

Typically, "[i]f additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  However, district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, *with or without remanding the cause for a rehearing*." 42 U.S.C. § 405(g) (emphasis added).  Thus, "in appropriate circumstances[,] courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019.  The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020.  However, even when each of these circumstances are present, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [a court's] discretion." *Treichler*, 775 F.3d at 1101–02 (quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)).

Here, as discussed above, Plaintiff requests a remand for the direct award of benefits. (ECF No. 15 at 24.)  In the alternative, Plaintiff requests that the Court remand this matter to cure any legal defects.  (*Id.* at 25.)  For the reasons stated above, the Court finds that further administrative proceedings would serve a useful purpose in this case, and therefore remand would be the appropriate remedy to address the legal errors identified in this decision.

///

///

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court **DENIES** Plaintiff's merits brief to the extent it requests remand for the direct award of benefits, but **GRANTS** Plaintiff's merits brief to the extent it alternatively requests remand for further administrative proceedings. Consistent with this determination, the Court **ORDERS** that judgment be entered reversing the Commissioner's decision and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  March 11, 2024

Hon. Jill L. Burkhardt
United States Magistrate Judge

23-cv-01141-JLB